Thank you, Your Honors. May it please the Court, my name is Sherry Clevens and I represent the appellant in this appeal. I would like to reserve three minutes of my time for rebuttal. This appeal involves an insurance coverage dispute and addresses a narrow legal issue. That is whether Section 533 of the California Insurance Code, which precludes insurance coverage for intentional misconduct, applies to pretrial settlements where there is no formal adjudication of misconduct. The appeal also addresses the dismissal of Aspen's claims related to other coverage conditions in the policy at issue. As to the first issue, California courts have repeatedly applied Section 533 to both pretrial settlements and judgments. The only relevant consideration is whether the claim being settled in any particular action requires intentional misconduct. And the claim at issue here, malicious prosecution, is a type of claim involving intentional conduct, as it includes an element of malice in the state of California. Moreover, even the precise issue before us, whether Section 533 precludes coverage for a settlement of a malicious prosecution claim, has been answered before. In the Downey case, that's Downey Venture v. LMI, the California Court of Appeal held that an insurer was entitled to reimbursement of a pretrial settlement payment to resolve a malicious prosecution claim asserted against a partnership and its individual partners. In doing so, the Court of Appeal rejected the very same arguments made by the Miller-VanDust parties here. So it seemed that there was some language in the Downey decision that the district judge found dispositive of this issue. It's the section with Downey where the court states that, this turns on whether the defendant is, or the insured, is personally liable as opposed to vicariously liable. And what is there here that would establish direct liability for the law firm as opposed to the individuals? So the allegations in the underlying complaint asserted direct liability against the law firm as well as the individual lawyers. Well, but how could, tell me how you, how you get direct liability against the law firm? Well, the law firm, first of all, was representing the underlying party in the litigation. No, I understand. But, I mean, the law firm is a LLP. It's a corporation. Corporations act through their agents. And here it's the lawyers that screwed up. And I'm not sure that makes a difference. I want to, you know, I don't, I'm not, I'm not arguing for a moment. I'm just suggesting that it has to be, that the corporation is liable for the malicious prosecution that was instituted by the lawyers employed by the firm. Is it not? Yes. And in fact, the law of California is that entities can be liable for malicious prosecution. Sure. So I'm not, again, I'm not sure that distinguish, the district judge may have been wrong in focusing on vicarious liability, but surely the liability here is vicarious of the firm. Is it not? I don't agree because the underlying allegations of the complaint at issue are what is, what determines whether or not there's an indemnity on behalf of that entity. So in this instance, when an insurance company is evaluating loss, it has to look at the actual allegations of the underlying complaint. That's the law. Who's insured in this case? Is the law firm itself one of the named insured as well as various partners or how was this policy issued? The policy is issued to the law firm and its partners. But the defendants in this case are who? The law firm and its partners. Okay. So, so your argument, at least as I understand the argument is the partners. They're being directly sued. They're not vicariously liable. Let's assume that the law firm's liability is vicarious just for a moment. Does that make a difference? It might make a difference. Those aren't the facts here because in this case, the allegations are not vicarious. So you're, so you think that it does make a difference? I don't know if it makes a difference or not. Well, I'm asking you whether it does. It's it, let's assume it's an important issue to me and I have to decide the case based on it. What's your position? In other words, are you asking me whether if the law firm is only vicariously liable? Vicariously liable, whether or not your, your client has an obligation of indemnification. In that scenario, the insurance company would have had the ability to say, we don't have the obligation to pay. And they could have made a decision either to not settle the claims on behalf of the law firm. Okay, but I understand. Or defended it. Why would they not have the obligation to pay if the liability was vicarious? Well, I'm not sure that the, that they would not have had an obligation. But what I'm suggesting is that under these facts, both the law firm and the individuals demanded settlement by the insurance company because of the risk of exposure. And then as soon as the insurance company complies with that request. And that's why I think all the claims of bad faith and other stuff are silly. I'm just, I'm asking you a very specific question. Let's assume the law firm's liability is vicarious. Under those circumstances, under this policy, do you have an obligation to indemnify if the underlying tort is malicious prosecution? I think the answer might be no. But again, in that scenario. Doesn't the answer have to be no from your standpoint? It depends though on whether or not the defendant in that case, the law firm, has the ability to defend on that basis. In other words, I believe that the answer would be no, no, there's no indemnification obligation because the law firm in that scenario would have been treated separately from the individuals. Well, but isn't the law, the law firm only has liability. And I guess, I don't want to make your argument for you, but it seems to me the law firm only has liability in this circumstance because it's lawyers engaged in malicious prosecution. And if your policy doesn't cover malicious prosecution because of 533, then it seems to me to make no difference whether the law firm's liability is vicarious or direct. But I can't, now I'm making your argument for you, so I guess I'll stop. Well, it seems, I think the district court may have been considering the California cases that talk about the innocent insured. So the example that comes to mind is the case where the husband and wife ran a daycare center, the husband was molesting children, the wife was covered because she was considered innocent. So is there a scenario where this law firm could be considered innocent while the partners would be liable for malicious prosecution? There is a scenario where the allegations were not the same, and where at the time of potential settlement, the law firm comes to its insurer and says, we don't want you to settle claims against us, we have no liability, we'll defend our claims. The only potential liability is for the individuals, and that's what you should indemnify. But that would require that the individuals be off on what we call a frolic and a detour. Maybe. The law firm says we don't have any liability because God knows what these crazy lawyers were doing. But that's not this case. That's not this case. That's exactly right. In this case, the lawyers were acting 100% of the time as agents of their firm, and therefore the law firm has the same liability as the individuals have. It's not as though the law firm only has liability as a supervisor. In this instance, we're talking about agency law, which is different than responding at liability. So, the point is that because what Aspen paid inevitably was to settle malicious prosecution exposure, it has to be barred by 533. There's no scenario under these facts where these individuals and this law firm all asked Aspen to pay malicious prosecution exposure that it could be covered under California law. Could you address briefly, if you want to, the district court's conclusion that the professional liability part of this policy apply? Can you say that again? No. Go ahead. I'll ask the question differently later. Okay. So, moving on, part of the issue with the opinion of the district court is that the Downey Venture case directly addresses the issues and the facts that forth here. It is on all fours with this case. It has the same exposure, the same lack of a finding of liability. It was a pretrial settlement that led to the ultimate decision in Downey. And yet, in this case, the district court seemed to suggest a couple of different errors. The first was that the court relied on a sentence in the Downey case that suggested that it did require a finding. And that was the decision or the statement in the court's opinion where it said, Section 533 precludes indemnification to any insured who is found personally as opposed to vicariously liable. But as noted, the Downey opinion seems to be addressing the vicarious liability issue and not the finding issue when it makes that conclusion. Second, the district court here misunderstood what the Willful Act was that was at issue. The district court essentially looked at the requirement for Willful Act, which is an act that is both intentional and wrongful, and misunderstood what Aspen was asserting the Wrongful Act to be. In other words, the district court claimed that the act of settlement could not be a Wrongful Act, but Aspen was never asserting that the settlement of the malicious prosecution claim was the act that was willful and wrongful. Aspen was, in fact, asserting that the malicious prosecution acts were the Willful Acts at issue. And that was just a misunderstanding by the district court. Third, the district court recognized that there was no finding in Downey, but then without... Just a minute. Going back to what you just explained... Yes. Now, when you say the Wrongful Act was a malicious prosecution... Yes. Now, that's going by the allegations in the complaint, right? That's correct. So, what are you saying? The district court disregarded the allegations in the complaint? Yes, he did, because he misunderstood the allegations. He reaches the conclusion in the district court opinion, and I'm quoting, because the act of settlement, though intentional, is neither wrongful nor inherently or predictably harmful, it could not be the Willful Act. But we were never asserting that the settlement... Well, and I take it your point is that the plaintiffs aren't asserting that either. They're not saying that you wrongfully settled the case over their objection. That's correct. It was just a misunderstanding in the court's opinion. Third, the court attempted to distinguish the Downey Venture case by essentially arguing that it created a new standard for Section 533 that prohibits coverage without an adjudication of liability, provided there is a presumption of liability for a Willful Act. And so, the court then said, well, there had been a pretrial adverse ruling against the individuals, and the insureds in that case had made a demand on their insurer to settle, so there was a presumption that there was a Willful Act, even if there was no finding. The problem with that is that that's not the law of the state of California. And the second problem with that is that those facts are almost identical to the facts of this case. In this instance, there was an adverse pretrial ruling. There was a demand by all of the defendants to have their liability insurer pay to settle the case. So the facts are identical to the Downey case, and there should have been no distinction made between those two decisions. The district court also put California insurers in an untenable position that creates a catch-22 in light of decisions in California that require an insurer to indemnify in connection with California law does not allow an insurer to refuse to settle, even if the insurer has agreed to defend under a reservation of rights and where coverage is otherwise precluded by contract or case law. In the seminal cases of Johansson and Blue Ridge, the California Supreme Court established an insurer's duty to settle claims involving coverage disputes subject to the right to seek reimbursement. In light of that, the decision of the district court would give an insurer who receives a demand to pay a settlement for intentional conduct only two options. The first would be to pay the uncovered claim and have no recourse because the settlement would have been demanded prior to an adjudication. Or in the alternative, they could refuse to settle the uncovered claim, even if the settlement is reasonable and in doing so risk liability associated with breaching its duty to accept reasonable settlements. Not only does California law not place insurers in that catch-22, but it would allow tortfeasors to obtain insurance coverage for their willful misconduct, shifting the consequences to their liability insurers in contravention of the legislator's decision to enact Section 533. Did you want to reserve any time? I would. Thank you, Your Honor. I'll pause there to preserve my remaining time for rebuttal. Thank you. Mr. Ehrlich? May it please the Court, my name is Justin Ehrlich, appearing on behalf of the appellees. Justice Hurwitz, you asked... Judge, there is no justice in the Ninth Circuit. Judge Hurwitz, I promoted you. You asked whether, first of all, whether there were allegations of vicarious liability and whether that would make a difference. I read from excerpt of record, page 63. I assume there are. I just don't know why it makes any difference in this case. There are. Aspen, I mean, Downey, as I recall, liability was placed on a joint venture because of liability of the venturer, because of the acts of the venturers. So I'm not, I understand there are allegations of vicarious liability. I just don't know what difference it makes. So tell me why this distinguishes the case from Downey, whether there plainly had to be vicarious liability, because the joint venture, a joint venture doesn't act except through the acts of its venturers. Well, Downey explicitly states that this is what the determination turns on, stating where a principle is held vicariously liable for an agent's act of malicious prosecution, Section 533 poses no obstacle to indemnifying the principle. And it goes on importantly... But isn't that because, as Judge Beatty, Justice Beatty, suggested, that's because sometimes you can have an innocent principle. But I don't understand how the law firm can be innocent in this case. The law firm can certainly be. The issue is vicarious. Remember, we've got five defendants. We've got a law firm. We've got four individual lawyers. So this is a good example... So if your individual lawyers go out and institute a malicious prosecution, the law firm, the law firm is innocent? They're liable, but they're vicariously liable. Judge Beatty, you brought up the American States Insurance versus Borbor case. This is the case where you have the husband and wife who are running a preschool or something, and you have the husband go off and commit unbelievably heinous acts, perhaps the worst acts that can be committed, child molestation, taking pictures of children and such. His wife was deemed to be liable. But she was innocent. But she was vicariously liable. But she was also innocent. So tell me how your client was innocent in this case. Well, the issue... First of all, there's been no determination, and that's the issue. There's been no finding of facts. That's a separate issue for the moment. I want to get back to that. But it seems to me here that there is no real claim that the law firm is being unfairly held vicariously. Well, I have to give you a hypothetical because there's no finding of facts, there was no litigation of it. But let me give you a hypothetical. I said that there were four individual lawyers in a law firm. One of those individual lawyers was an associate. He was an associate. Now, there's been no factual determination. We don't just... Indictments aren't convictions. Allegations are not findings. And that's why Downey is saying, if the issue turns on whether liability is personal, i.e. direct, or whether it's vicarious, then go get a finding. It may turn out, Judge Hurwitz, that the law firm... If that happened, the facts may lead to where they lead. But Downey is saying that if that is the key issue on which the determination of whether 533 borrows insurance coverage turns, then you've got to go get a finding. Is it your position that you're entitled to a trial on whether or not the law firm was aware of what these lawyers were doing? Absolutely. What I'm saying is... So you're saying that the judge on 533 shouldn't have granted judgment, shouldn't have found that 533 didn't apply. You're saying 533 does apply, but there's an issue of fact. Judge Burrott was entirely correct. Well, he can't be if you say you're entitled to a factual determination on the issue. If I may, the allegations... There are allegations, I think we agree, of vicarious liability. Aspen settles. Blue Ridge, as my colleague points out, Blue Ridge sets out a scheme by which insurance carriers assert their coverage positions and assert their exclusions, including 533. Remember, 533 is a policy exclusion, and therefore Aspen bears the burden to show... Wait, wait, wait, wait, wait. 533 is a statutory exclusion, and so the rules of statutory construction apply, not the rules of interpreting an insurance policy. That's correct, but nonetheless, it's an implied exclusion in every contract, and the law is still that the person asserting the... So here's the issue I have with your suggestion that Downey means that you have to have an exemption, and that would mean that in this case, Aspen would either have to indemnify the claim, the malicious prosecution claim, and reserve rights knowing, well, we can't recover this money unless we go to trial against our insured and prove up this case. And we're not parties to the underlying suit. We don't have all the information, the discovery, so it seems as if it creates an untenable conflict of interest between the insurer and the insured, because the insurer would want to say, no, let the trial go forward. Let the underlying plaintiffs prove the malicious prosecution. They're in the best position to do so. And then let the chips fall where they may, and we will indemnify or not. But that would be the result if they have to have an adjudication rather than a settlement, and that seems completely untenable under California law. Well, two responses. First of all, that's already how California law handles how a carrier asserts its policy defense. Well, so tell me how the carrier is supposed to proceed under that circumstance. In this case, we all agree, I think. I'm pretty sure we all agree. The law firm and the individual lawyers demanded that this case be settled, correct? Correct. They settled it. You were happy with that. You didn't want them not to settle it. You wanted them to pay the money and settle it. They want to maintain their position that you're not covered. Now you're saying, well, they can't maintain that position because they settled the case. They can absolutely maintain that position. How can they maintain it? So Aspen filed a coverage action, a declaratory relief action. The issue in this case is that They filed the action, and Judge Barat said, you can't assert 533 in this case. And that's  Or they have to try the underlying case. They've got to try an underlying case against you. If they do, then the judge was incorrect in granting summary judgment, wasn't he? Aspen said over and over and over, it had no desire or intention to prove any malicious prosecution. And that's the key to this case. That's not all they said. They said we're not alleging malicious prosecution or trying to prove that because we don't have to. What this turns on is the alleged underlying conduct. And the reason the coverage would be denied is because the underlying alleged conduct is willful and intentional and wrongful. And so it turns on the allegations in the underlying complaint, not on what Aspen alleged against its insured. Well, again, the underlying complaint has both. I think we all agree. I think everybody agrees that there are vicarious liability allegations. So if that's if that's what we're just looking at the complaint, that's a fact. When Aspen and again, getting back, if I can, to respond to your question more directly. All day, every day in federal courts, insurance carriers bring cases and they assert their policy defenses. They assert their exclusions and those cases are there. They're tried. Aspen made a strategic decision that it wasn't going to do that. It wasn't going to make the showing. It refused to make the finding. And the context within which they made that decision is important. In their briefs below, they said over and over that we have no intention. They said we don't have to, but they said we have no intention. Then oral argument comes around and it was clear that at the very least the judge was skeptical of their position. They asked for leave to file a surreply. They again, they doubled down stating Aspen therefore need not prove that defendants in fact committed malicious prosecution and has no intention of doing so. And all the while they didn't ask for leave to amend. So to say, so Judge Barat says, well, if you're not going to do it and you're not going to ask me for permission to do it. Well, if that's a required finding under Downing, which it clearly says that that's what the issue turns on. Was it your position that they should have sued you for, that they should have tried the issue of whether or not your clients engaged in malicious prosecution? They should have. No, I'm asking you, did you tell Judge Barat? No, no. Our position is if they want to prevail in their insurance defense, they need to prove that we engaged in malicious prosecution. Absolutely. We told Judge Barat. Where did you say that below? You weren't seeking a trial on whether or not you'd engage in malicious prosecution, were you? We responded to their complaint. No, that's not what I'm saying. I'm asking whether or not you ever took the position in front of Judge Barat that judge, if they want to deny coverage under this policy, they need to prove up that we engaged in malicious prosecution. Both sides had the same position. It's covered by the complaint. It's not covered by a factual showing in this trial. I think that that position was put forth when we said that you have to get a finding and that Downey says you have to get a finding. Wait a minute. Doesn't Downey explicitly say that the remaining issue was maliciousness? Malicious prosecution was not established. There were not findings. They had an adverse ruling, just as the insureds did here, and then they wanted to settle just as you wanted to settle. But issue wasn't resolved in the Downey case. I think timing is the issue. That was at the time of the settlement. But in Downey, unlike in this case, that case proceeded in the federal court, and there were multiple summary judgment motions that were heard by then the district court judge. So that issue was tried, and it was adjudicated. Was it adjudicated? Was there a finding by the district court judge that the insureds engaged in malicious prosecution? I think by inference there was. Well, we don't make findings by inference. You've been around a long time. We make findings. They didn't expressly, you know, identify the finding. I think if they did, then, you know. Wasn't there a finding by inference in this case that this wasn't a slap suit? Pardon me? There was a slap suit finding in this case, wasn't there? Which is, according to the Ninth Circuit, not any finding on the merits. There wasn't any finding on the merits in those other cases either. Well, that's unclear. I don't agree with you. That's unclear in Downey because Downey, again, there were multiple summary judgment proceedings. I've read the record in Downey. Can you point to me where in Downey there was a finding by a judge that the insureds had engaged in malicious prosecution? As I say, I think the only way I get to that conclusion is. . . Because they kept losing preliminary motions saying that there wasn't a triable issue of fact. Well, again, I wouldn't take the inference to that place, but I take your point. And Judge Beatty, I just wanted to get back and respond to one of your points that I didn't get an opportunity to mention. You talked about the catch-22 that insurance carriers would be in. And my first response was that carriers do this all the time in terms of their declaratory relief actions for all manner of exclusions. But the problem is they would have to put their own interest above their insured and say the insured wants to settle. They want to cap their exposure. They don't want to continue the process of litigation for all sorts of reasons. But because we don't think there's coverage, we're not going to settle. We're going to insist that this go forward because we need a finding, an adjudication of malicious prosecution. So that, to me, creates an untenable conflict of interest. Two things. Johansson and Blue Ridge already established that they can't do that. So the only issue is do they have to go make the finding. But a better answer. . . What they have to do, in your view, is settle. Whether they are required to indemnify their insured or not, they have to settle. No different than any policy exclusion. You said they must thereafter sue the insured and prove the insured engaged in malicious prosecution. And get a finding. I can get a finding, of course. But the more direction. . . So when you sign up to get covered by an insurance company, do you think one of their obligations is to sue you for intentional torts? Well, Your Honor, if Aspen or any of these other companies didn't want to be in this position, all they need to do, remember, is stop putting malicious prosecution explicitly, explicitly as something that is covered in their policy. Well, it's explicitly not covered because of 533. We all agree, and you're not arguing to the contrary, that malicious prosecution is covered by 533. I think what you're suggesting is somehow that's misleading on the part of the insurer. But they have other insureds in other states that do not have Section 533. And what it does is requires them to provide a defense, which seems to be a pretty good deal. You've got a defense and a settlement for a claim that is not covered under California law. Well, in California, my point is this policy explicitly covers malicious prosecution. And it would be the easiest thing in the world if a carrier doesn't want to put itself in this position to simply, say, have a California writer. But you agree that 533 is read into the policy, correct? Absolutely. And you all agree that malicious prosecution is one of the things that 533 says you don't have to provide indemnification against. If you get a finding? No, put aside the finding issue. You do not have to indemnify a judgment based on malicious prosecution. I don't agree. In the case of vicarious liability, and Downey goes through case after case after case, where you can get coverage for malicious prosecution if you are vicariously liable, no different than Isabel, the wife of the gentleman who in the Borbor case. I see that my time is up. Well, I just want to point out one thing to you. So you have been providing an interpretation of Downey, but look at the page break at 489 to 490 in Downey. As a result of the rulings, the only issue which had remained to be litigated was the question of whether the Downey plaintiffs acted with malice. So that was an open issue at the time of the settlement, and the court still found that 533 precluded coverage. And my point there is that there was a significant amount of litigation in the federal court in the coverage case, and there were multiple summary judgments before the federal court after the settlement. So, Your Honor, you're correct that at the time of the settlement there was only one issue to decide, the issue of malice. But there was a lot of water that passed under the bridge between the time of the settlement and the time that multiple summary judgments were ruled on, where Downey, I say by inference, made a fine judgment. You say ruled on. There wasn't a summary judgment entered in Downey, was there? As I recall the record, summary judgments were denied. I believe that's correct. Well, you know what, I'm not sure about that. There were cross motions, so I'm not sure about that, to be frank. All right, well, thank you. You are over time. Ms. Clevens, you had reserved a minute and a half. Thank you, Your Honors. I will keep my comments brief. First of all, I want to just remind the Court that in the Downey Ventures case, as well as in this case—actually, let me strike that and say that differently. In this case, in the underlying matter, the only claim that was asserted was for malicious prosecution, and it was asserted against all of the individuals and the entity. It makes no difference whether it's an associate or otherwise. If there's an entity that can only be liable in this instance based on its direct conduct or through its partners who acted on its behalf, then that liability and the indemnity that the insurer pays is undoubtedly in violation of Section 533, because that was the only claim in the underlying action. I also wanted to note that Section 533 would be completely gutted under this interpretation and the application of the vicarious liability that is being asserted here. And the reason is because anytime you have a law firm partnership where you have both lawyers and the partnership accused of malicious prosecution, all of those parties could just insist that the matter be settled, and then the claims against the law firm would nonetheless be indemnified, and the insurer would inevitably be paying in every instance for malicious prosecution damages. And then lastly, I just want to address the issue of amendment of the complaint. Aspen's position all along in the underlying case was that Downey does not require Aspen to prove malicious prosecution. We never said we were unwilling to do so. The position that we were taking was that it was not required. If, in fact, it is required, at this stage of the proceedings, there would be literally no prejudice to the appellees for Aspen to amend its complaint and for the case to proceed to discovery so that Aspen can prove malicious prosecution. Thank you very much. Thank you. Thank you both for your arguments this afternoon. The case is submitted.
judges: TASHIMA, HURWITZ, BADE